IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| L.P., by and through his Next Friend, TENYIAH PATTERSON, J.H., by and through his Next Friend, NIKIA CANNON, I.J., by and through her Next Friend, JANICE STEVENSON, J.B., by and through her Next Friend, SHARON FRY | : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | NO. 1:15-CV-11236 |
| MARIAN CATHOLIC HIGH SCHOOL, JOANNE DRACKERT, the ARCHDIOCESE OF CHICAGO, and OMEGA LABORATORIES | : : : : : | |
| Defendants | : | |

**DEFENDANT OMEGA LABORATORIES, INC.' S BRIEF IN SUPPORT
OF ITS RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Omega Laboratories, Inc. ("Omega") files its Brief in Support of its Motion to Dismiss Plaintiffs L.P., J.H., I.J., and J.B.'s ("Plaintiffs") claims against Omega and would respectfully show the Court as follows:

### I. FACTUAL ALLEGATIONS

Plaintiffs are current or former African-American students of co-defendant Marion Catholic High School ("MCHS"), a private high school located in Cook County, Illinois. (Complaint, ¶ 12). As condition of admission to MCHS, all students, including Plaintiffs, agreed to participate in MCHS's mandatory drug testing program, including random drug testing. *Id*. at ¶¶ 13–14. Omega is an accredited laboratory that provides forensic laboratory hair drug testing services and was contracted by MCHS to perform hair testing. *Id*. at ¶ 11.

At various times throughout the 2014–2015 and 2015–2016 school years, MCHS directed each Plaintiff to submit to random drug testing. *Id*. at ¶¶ 12, 17, 25–26, 34, 39, 50, 52, 55, 58, 65, 68, 73, 81, 83, 85. Omega tested the hair specimens collected and identified by third-parties as submitted by Plaintiffs in accordance with MCHS's instructions. *Id*. at ¶¶ 18, 22. Plaintiffs assert Omega tested a total of fourteen (14) hair specimens submitted by the Plaintiffs, eleven (11) of which screened and confirmed positive for the presence of cocaine and cocaine metabolite (Benzoylecgonine) above the designated cut-off level. *Id*. at ¶ 19. In each instance, Omega reported the negative and positive laboratory results of the specimens only to MCHS in accordance with its contract with MCHS. *Id*. at ¶ 18, 22, 144. Pursuant to MCHS's drug testing policy, MCHS required Plaintiffs to undergo more frequent random testing and attend substance abuse counseling after each tested positive for cocaine. *Id*. at ¶¶ 54.

Despite their hair specimens testing positive for cocaine and its metabolite, Plaintiffs contend that they did not use or ingest cocaine. *Id*. at ¶ 20. Instead, Plaintiffs appear to argue that the presence of cocaine and its metabolite is attributable to some other factor, including their hair color—dark, and/or their race—African-American. *Id*. at ¶ 23. Plaintiffs allege that unspecified research and studies show that testing for the presence of drugs or drug metabolites in hair is flawed, "in that dark haired people are more likely to test positive than blondes, and African-Americans are more likely to test positive than Caucasians." *Id*. Plaintiffs seem to contend that Omega markets and promotes drug testing in hair that is incapable of being used for the purposes anticipated by MCHS. *Id*. at ¶¶ 23, 100, 148. Specifically, Plaintiffs appear to challenge the scientific basis for hair testing to detect the use or ingestion of controlled substances. *Id*. at ¶ 23. In the alternative, Plaintiffs claim that Omega was negligent on eleven (11) separate occasions when it tested hair specimens identified by third-parties as having been

submitted by Plaintiffs for testing ordered by MCHS that Omega reported positive for cocaine.[1] *Id*. at ¶¶ 26–27, 50, 52–53, 55–56, 58–59, 68–69, 73–74, 81–86, 147–53.

As support for their claims that they did not use cocaine and that Omega's test results are inaccurate, each Plaintiff alleges that, at various times after Omega reported positive results, he or she submitted to subsequent independent drug tests, including hair tests, which were negative for controlled substances. *Id*. at ¶¶ 21, 29–30, 40–43, 60–61, 71–72, 87–90. Additionally, Plaintiff J.B. relies on a subsequent test performed by Omega that was reported negative for all illegal substances, *id*. at ¶¶ 39, 46, while Plaintiff I.J. relies on earlier Omega tests that were reported negative. *Id*. at ¶ 25. Thus, they contend MCHS erroneously concluded they had consumed cocaine and MCHS acted on that conclusion to Plaintiffs' detriment. *Id*. at ¶ 143.

Based upon these limited factual contentions, Plaintiffs allege that Omega intentionally discriminated against them on the basis of their race because it knew or should have known that drug testing in hair causes cocaine false positives in African-Americans. (Complaint, ¶ 100). Plaintiffs allege they were deprived of the enjoyment of all benefits, privilege, terms, and conditions of their contractual relationship with MCHS, *id*. at ¶ 102, and suffered emotional distress and inconvenience. *Id*. at ¶ 103. Plaintiffs also bring a number of state law claims, including negligence and defamation against Omega. *Id*. at ¶¶ 140–153. Each of Plaintiffs' claims fails as a matter of law.

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the

---

[1] Presumably, Plaintiffs are not claiming that Omega was negligent in its testing of the three (3) negative specimens.

plaintiff, accepting as true the well-pleaded allegations, and drawing all reasonable inferences in plaintiff's favor. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). However, legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth afforded to well-pleaded facts. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiffs' Complaint must contain factual allegations plausibly suggesting, and not merely consistent with, an entitlement to relief. *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009)).

### III. <u>ARGUMENT & AUTHORITY</u>

A. **Plaintiffs' Race Discrimination Claims Against Omega Fail To State Any Claim For Which Relief May Be Granted.**

    *1.    Plaintiffs fail to allege, and cannot show, intentional discrimination by Omega.*

In order to state claims for violations of 42 U.S.C. § 1981 (Count I), race discrimination under Title VI of 42 U.S.C. § 2000d (Count II),[2] and alleged violations of equal protection and procedural due process under 42 U.S.C. § 1983 (Counts III and IV), Plaintiffs must plead and show discriminatory intent by Omega. *See, e.g.*, *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 697 (7th Cir. 2015) (Title VI prohibits only intentional discrimination) (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001)); *Hodges v. Public Bldg. Comm'n of Chi.*, 864 F. Supp. 1493, 1501 (N.D. Ill. 1994) (to state claim under Title VI Plaintiffs must allege they were intentionally discriminated against on the basis of race); *Borggren*, 799 F.3d at 696 (Equal

---

[2] Additionally, Plaintiffs fail to state a cognizable Title VI claim against Omega because Plaintiffs have not alleged that Omega was the recipient of federal financial assistance for the testing at issue in this lawsuit. Title VI of the Civil Rights Act of 1964 protects persons from discrimination based on race in programs or activities that receive Federal financial assistance. 42 U.S.C. § 2000d. Plaintiffs, however, allege only that MCHS was a recipient of federal funds as defined by Title VI, not Omega. (<u>Complaint</u>, ¶ 7).

4

Protection Clause of the Fourteenth Amendment prohibits intentional and arbitrary discrimination) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *Franklin v. City of Evanston*, 384 F.3d 838, 846 (7th Cir. 2004) (to establish equal protection claim under Fourteenth Amendment, Plaintiffs must show defendant "acted with discriminatory intent."); *Gen. Bldg. Contractors Ass'n v. United Eng'rs*, 458 U.S. 375, 391 (1982) ("[Section] 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."). Plaintiffs' claims against Omega are based entirely upon forensic laboratory drug testing services provided by Omega to MCHS. Plaintiffs' discrimination claims against Omega fail as a matter of law.[3]

Plaintiffs fail to plead any facts demonstrating discriminatory intent by Omega. Plaintiffs allege Omega unlawfully discriminated against them on the basis of their race by testing their hair specimens for the presence of drugs of abuse. (Complaint, ¶¶ 23, 100). Plaintiffs do not allege that Omega purposefully or intentionally reported their hair specimens were positive for cocaine because they are African-American. Instead, Plaintiffs simply allege that unspecified studies demonstrate hair testing creates false positives in people with dark hair and is more likely to cause false positives in African-Americans than in Caucasians. *Id*. at ¶ 23. Plaintiffs also allege that Omega "knew or should have known that its drug testing brought forward false positives for cocaine usage in African-American students, including Plaintiffs." *Id*. at ¶ 100.

Plaintiffs' allegations against Omega are based solely on an allegation that hair testing for cocaine may have a discriminatory impact on persons with dark hair, and specifically African-Americans. On the face of their Complaint, Plaintiffs have alleged nothing more than that a facially neutral drug testing policy allegedly had a disparate impact upon African-Americans.

---

[3] Plaintiffs support their Constitutional claims with bare conclusions that fail to satisfy pleading requirements. For example, Plaintiffs allege Defendants violated Title VI by "subjecting Plaintiffs to a hostile environment and treating Plaintiffs differently because of their race and/or because of opposing discrimination." (Complaint, ¶ 106). Plaintiffs, however, fail to demonstrate how Omega violated Title VI or how these claims even relate to Omega.

5

No allegations have been made by Plaintiffs from which it can be inferred that any alleged discriminatory considerations were involved in Omega's forensic drug testing of Plaintiffs' hair specimens for controlled substances. Plaintiffs do not allege that Omega adopted a testing methodology because Omega intended to discriminate against African-American specimen donors, nor do Plaintiffs suggest Omega was aware of, or intended, such an impact on a specific group of donors. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (allegation that defendant knew its production retention program had a disparate impact on black brokers "legally insufficient" to plead discrimination, ruling complaint needed to allege factual content to support inference "that *the retention program itself* was adopted *because of* its adverse effects on black brokers."). Plaintiffs therefore fail to include any factual basis for an inference, much less an allegation, that Omega's hair testing was motivated by any intent to discriminate.

Furthermore, Plaintiffs also do not allege any facts to support even an inference that Omega had knowledge of their race when it tested their hair samples. It is undisputed that Omega never met Plaintiffs, and that there was no contact between Omega and any Plaintiff prior to Omega testing their hair specimens and reporting Plaintiffs' test results. As a matter of law, Omega cannot discriminate against Plaintiffs if it is unaware of Plaintiffs' race. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751(7th Cir. 2002) (summary judgment affirmed where defendant did not know Plaintiff's race); *Robinson v. Adams*, 847 F.2d 1315, 1317 (9th Cir. 1987) (summary judgment affirmed where no evidence that plaintiff's race was known).

Plaintiffs do not allege any facts to support a claim Omega discriminated against them individually because of their race and their allegation that Omega's hair testing for cocaine disparately impacted them because they are African-American is insufficient to establish discriminatory intent or purpose as necessary for each of their discrimination claims. *Pers.*

*Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 ("Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. . . . [i]t implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.") (citation and footnote omitted); *Lora v. Board of Educ.*, 623 F.2d 248, 250 (2d Cir. 1980) ("'[F]oreseeable result' standing alone is not sufficient to establish the requisite discriminatory intent" (citing *Columbus Bd. of Ed. v. Penick*, 443 U.S. 449, 462 (1979))); *Cannon v. Univ. of Chi.*, 648 F.2d 1104, 1109 (7th Cir. Ill. 1981) ("An illegal intent to discriminate cannot be posited solely upon a mere failure to equalize an apparent disparate impact."). Each of Plaintiffs' Constitutional and discrimination claims therefore fails as a matter of law. *Cannon*, 648 F.2d at 1109 (disparate impact alone is not sufficient to establish violation of Title VI); *Franklin*, 384 F.3d at 848 ("[E]qual protection claims, like § 1981 claims, require a showing of discriminatory treatment and cannot be supported by proof of disparate impact."); *Smith v. Boyle*, 144 F.3d 1060, 1064 (7th Cir. 1998) ("[T]o be actionable a denial of equal protection must be intentional. . . . disparate impact—a law's unintentionally bearing harder on one group than another—is not a permissible basis for finding a denial of equal protection." (citing numerous cases, inter alia, *Washington v. Davis*, 426 U.S. 229 (1976)); *Feeney*, 442 U.S. 256)).

### 2. *Plaintiffs' § 1981 claim fails as a matter of law.*

Plaintiffs' § 1981 claim against Omega also fails as a matter of law because Plaintiffs do not allege they had a contract with Omega, rather Plaintiffs allege they only had a contract with MCHS. *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (summary judgment affirmed where § 1981 plaintiffs never sought to enter a contractual relationship). Plaintiffs' race discrimination claim against Omega goes beyond any claim previously recognized, seeking

7

to hold Omega liable under § 1981 despite Omega not having any contractual relationship with Plaintiffs.

   3.   *Plaintiffs' § 1983 claims fail for lack of any state action.*

Although it is not clear, Plaintiffs also appear to bring claims against Omega under 42 U.S.C. § 1983 for violations of equal protection and procedural due process. In addition to failing to specifically reference Omega in making these claims, Plaintiffs' 42 U.S.C. § 1983 claims against Omega fail because Plaintiffs make no allegations or factual contentions of state action. Absent an allegation that Omega deprived them of a Constitutional right by acting "under color of any statute" of the State of Illinois, Plaintiffs must allege Omega's actions are properly attributable to the state to hold Omega liable under §1983. *Stewart v. Hannon*, 469 F. Supp. 1142, 1147 (7th Cir. 1979). Plaintiffs have not, and cannot, allege any facts showing that Omega's forensic laboratory testing performed on behalf of MCHS can be attributed to the State of Illinois, and Plaintiffs' § 1983 claims should be dismissed. *Id*. (dismissing § 1983 claim against private entity performing testing and grading of entrance exam for Boards of Examiners and of Education, finding no state action).

   4.   *Plaintiffs have not sufficiently alleged a claim under 42 U.S.C. 1985(3).*

Finally, Plaintiffs allege "Defendants conspired to deprive them of the equal protection of the laws and/or the equal privileges and immunities under the laws of the United States and the State of Illinois." (Complaint, ¶ 123). To state a claim under § 1985, Plaintiffs "must locate a right independently secured by state or federal law," and allege facts establishing the conspiracy that "deprived [them] of that right." *Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir. 1988). Plaintiffs cannot establish a violation of any federal or state law by Omega, and make only a conclusory allegation that "Defendants agreed and conspired to relentlessly pursue drug use

accusations" and "[s]aid conspiracy was motivated by racial discrimination." (Complaint, ¶¶ 124–25). Plaintiffs fail to plead any facts demonstrating intentional discrimination, any state action, any conspiracy to deprive them of any right, or Omega's alleged involvement in any discriminatory conduct. Plaintiffs' § 1985 claims against Omega fail.

**B.   Plaintiffs' Defamation Claim Against Omega Fails State Any Claim For Which Relief May Be Granted.**

Plaintiffs allege that Omega defamed them when it reported the Plaintiffs' cocaine-positive drug test results to MCHS. (Complaint, ¶ 143). However, Plaintiffs do not dispute that Omega reported the results of their drug tests only to MCHS, pursuant to its contract with MCHS to provide forensic laboratory drug testing services. *Id*. at ¶¶ 144–45. Plaintiffs' defamation claims against Omega fail as a matter of law.

To state a claim for defamation, Plaintiffs must allege that: (1) Omega made a false statement about Plaintiffs; (2) there was an unprivileged publication of the statement to a third party; and (3) the publication damaged Plaintiffs. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 698 (7th Cir. 2006). The existence of qualified privilege is a question of law. *Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 916 (N.D. Ill. 2001), *aff'd*, 323 F.3d 524 (7th Cir. 2003). Even if the Court considered Omega's positive laboratory reports defamatory *per se*,[4] Omega's laboratory reports are not actionable defamation because it is undisputed that the testing and reporting occurred pursuant to Omega's contract with MCHS. (Complaint, ¶18).

In deciding if a qualified privilege exists, the Court determines whether, "as a matter of law and general policy," a recognized duty or interest exists that makes the communication privileged. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 134–35 (Ill. 1993)

---

[4] Plaintiffs do not allege that Omega contacted MCHS and accused Plaintiffs of using drugs. Plaintiffs allege only that Omega defamed them by reporting its cocaine positive test results to MCHS. (*See, e.g.*, Complaint, ¶¶ 144–45).

9

(adopting the RESTATEMENT (SECOND) OF TORTS §§ 593–99 (1977)). In reporting the laboratory test results to MCHS, Omega was acting pursuant its contractual obligations to MCHS and MCHS had an interest in receiving the test results in the administration of its drug testing program. (Complaint, ¶¶ 11, 18, 22). Omega's laboratory reports to MCHS are therefore protected by qualified privilege and Plaintiffs' defamation claims fail as a matter of law. *See Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225 (Ill. App. Ct. 1st Dist. 1995); *see also Chapman v. Labone*, 460 F. Supp. 989, 1003 (S.D. Iowa 2006) (finding lab's reporting of results to plaintiff-employee's employer privileged; *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1044 (N.D. Ohio 1998) (dismissing defamation claim based on finding lab had qualified privilege to communicate positive results of drug test to employer).

Plaintiffs' defamation claims also fail because Plaintiffs have not alleged any facts to suggest Omega abused the privilege. *Haywood*, 169 F. Supp. 2d at 917 (once qualified privilege is established, a communication is only actionable if plaintiff can show defendant abused the privilege). To overcome privilege, Plaintiffs must allege actual malice, *i.e.*, facts from which the Court can infer that Omega either intentionally reported their test results knowing they were false, or displayed a reckless disregard for the alleged falsity of their test results. *Kuwik*, 619 N.E.2d at 135. Plaintiffs have not, and cannot, allege a factual basis for any claim that Omega reported their laboratory test results to MCHS with malice and or knowledge that the test results were inaccurate when reported.[5] *Quinn*, 658 N.E.2d 1225 (court may determine abuse of privilege as matter of law and holding statements privileged where employer had interest in disclosing limited information to prospective franchisor and privilege not abused where plaintiff-employee requested release of report that included positive statements and ratings).

---

[5] Plaintiffs make several allegations involving statements made by a co-defendant. (Complaint, ¶¶ 47 & 57). To the extent Plaintiffs seek to hold Omega liable for a co-defendant's alleged statements about Omega's reported test results from Omega, there is no basis for the imposition of such liability.

Accordingly, Plaintiffs' defamation claims fail as a matter of law.[6] *See Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 845 (N.D. Ill. 2015) (dismissing defamation claim where plaintiff failed to plead facts demonstrating abuse of privilege); *see also Chapman*, 460 F. Supp. at 1003–1004 (finding allegations that lab knew testing procedures deficient insufficient to demonstrate actual malice to defeat privilege).

C.  **Plaintiffs' Negligence Claim Against Omega Fails To State Any Claim For Which Relief May Be Granted.**

  1.  *Plaintiffs' putative failure to warn claim fails as a matter of law.*

Plaintiffs appear to allege a variety of duties owed by Omega to Plaintiffs as support for their negligence claim. For example, Plaintiffs appear to allege that Omega owed them a duty to warn MCHS that African-Americans are allegedly more likely to test positive for cocaine than Caucasians or to conduct some other kind of testing for controlled substances other than hair testing because of their race.[7] (Complaint, ¶¶ 23, 100, 102). Regardless of how Plaintiffs characterize their negligence claim, their claim fails as a matter of law because the only duties, if any, a laboratory owes is to properly handle specimens and accurately report test results.

While some courts have recognized a limited duty owed by a laboratory testing facility to handle specimens with care and accurately report results in the employment context, courts have rejected claims alleging a broader duty to warn of causes for positive results that were due to

---

[6] Additionally, any claims for defamation based on drug test results reported by Omega before December 14, 2014 are also not actionable because they are barred by the Illinois one-year statute of limitations for defamation claims. *See* 735 Ill. Comp. Stat. § 5/13-201.

[7] While it is not entirely clear, Plaintiffs also appear to complain of negligent marketing or misrepresentation by Omega to MCHS regarding the reliability of hair testing. Under Illinois law, however, a claim for negligent misrepresentation requires an allegation of some "action by the [plaintiff] in reliance on the truth of the [allegedly false] statement." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). Plaintiffs allege only that MCHS relied on Omega's reported test results, and in fact, Plaintiffs affirmatively plead they did not rely on those results and expressly refuted the accuracy of the test results. To the extent Plaintiffs assert any claim based upon alleged representations made to MCHS or Omega's marketing of hair testing to MCHS, those claims fail as a matter of law. *Cahill v. E. Ben. Sys., Inc*., 603 N.E.2d 788, 792 (Ill. App. Ct. 1st Dist. 1992) (dismissing claim alleging third party reliance).

11

sources other than the use of drugs or alcohol and have expressly refused to find any duty to warn. *See, e.g.*, *Caputo v. Compuchen Labs., Inc.*, Civ. A. No. 92-6123, 1994 U.S. Dist. LEXIS 2191, 1994 WL 100084, at *3–4 (E.D. Pa. Feb. 23, 1994), *aff'd*, 37 F.3d 1485 (3d Cir. 1994) ("[T]he uses, potential misuse or abuses of drug test results does not justify imposing additional and unprecedented duties upon a laboratory with the sole function of analyzing a sample and returning a report, particularly when such report is factually accurate."); *Cooper v. Lab. Corp. of Am. Holdings, Inc.*, 181 F.R.D. 312, 816–17 (D. S.C. 1997) (no duty to warn that fermentation of glucose in urine specimen may cause positive alcohol result), *aff'd*, 150 F.3d 376 (4th Cir. 1998); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995) (laboratory owes no duty to warn of potential alternate causes of positive drug test results); *Vargo v. Nat'l Exch. Carriers Ass'n, Inc.*, 870 A.2d 679, 689–90 (N.J. Super. Ct. App. Div. 2005) (same). These cases, which involved similar allegations and claims similar to those of Plaintiffs, express the majority view that such claims are not legally viable under a negligence theory.

There is no precedent for the imposition of the broad, undefined duty Plaintiffs seek to impose on Omega. Omega does not owe Plaintiffs any duty to perform testing not requested by MCHS. Nor does Omega owe Plaintiffs any duty to warn MCHS about alleged alternative sources of cocaine in hair, especially alleged explanations for positive test results that are not supported by any scientific basis. Accordingly, to the extent Plaintiffs assert any negligence claim against Omega alleging Omega owed Plaintiffs any duty to warn MCHS about alleged biases in hair drug testing results, Plaintiffs fail to state a claim.

### 2. *Plaintiffs have failed to allege any compensable injury or physical impact.*

Plaintiffs claim they suffered emotional distress, including anxiety, stress, and humiliation and inconvenience as a result of Omega's allegedly inaccurate test results.

(Complaint, ¶¶ 31, 48, 63, 92). In order to state a claim for negligence, however, Plaintiffs must establish that: (1) Omega owed Plaintiffs a duty; (2) Omega breached this duty; and (3) Plaintiffs suffered an injury that was proximately caused by Omega's breach. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974)). Plaintiffs' rote recitation of the elements of a negligence claim fails to state a viable claim.

Plaintiffs contend that they suffered severe emotional distress, including shock, anxiety, humiliation, and inconvenience, (Complaint, ¶¶ 31, 48, 63, 92), and were subject to more frequent drug tests and threats of discipline. *Id*. at ¶¶ 28, 70, 80. Although Plaintiffs also contend that they were suspended or expelled because of Omega's testing, those allegations are unsupported and contradicted by their claims. Only Plaintiffs J.H. and L.B. are no longer enrolled at MCHS, and the factual allegations demonstrate that both withdrew from school and were not expelled. *Id*. at ¶¶ 62, 91 ("forced to withdraw" from MCHS pursuant to MCHS's substance abuse program). Therefore, although Plaintiffs' stated claim is styled as one for "negligence," Plaintiffs' factual allegations actually state a claim for negligent infliction of emotional distress ("NIED").

In evaluating NIED claims, Illinois courts separate "bystanders" from "direct victims." *See Corgan v. Muehling*, 574 N.E.2d 602, 605–06 (Ill. 1991) (recognizing the different tests applicable to bystanders and direct victims); *see also Kapoulas v. Williams Ins. Agency, Inc*., 11 F.3d 1380, 1382 (7th Cir. 1993). Bystander plaintiffs must satisfy the "zone-of-physical danger" test, which limits potential recovery to those individuals "'in a zone of physical danger and who, because of the defendant's negligence." *Kapoulas*, 11 F.3d at 1382 (quoting *Rickey v. Chi. Transit Auth*., 457 N.E.2d 1, 5 (Ill. 1983)). NIED plaintiffs alleging they are a direct victim of

alleged negligent infliction of emotional distress must satisfy the "impact" rule. *See Corgan*, 574 N.E.2d at 604–06.

In this case, it is undisputed that no act or omission of Omega placed Plaintiffs in physical danger. Additionally, there is no factual support for any claim that Omega's laboratory test reports to MCHS were "accompanied by a contemporaneous physical injury to or impact" on Plaintiffs. *Rickey*, 457 N.E.2d at 2; *see also Corgan*, 574 N.E.2d at 605. Plaintiffs do not allege a compensable injury suffered as a result of the Omega's alleged inaccurate drug test results other than emotional distress, and thus, Plaintiffs have not stated a legally cognizable negligence claim against Omega. *Lewis,* 561 F.3d at 707 ("A cause without an effect is not actionable under any form of negligence law."); *see also Wallis v. Card Servs. Int'l, Inc.*, Case No. 10 C 7250, 2012 U.S. Dist. LEXIS 70932, at *16 (N.D. Ill. May 22, 2012) (granting motion to dismiss finding alleged injuries of immense emotional pressure, the loss of business, reputation, etc. do not constitute contemporaneous physical contact or physical injury or illness sufficient to state claim for negligent infliction of emotional distress).

### *3. Plaintiffs' alleged negative drug tests do not state any factual basis for an allegation that Omega's reported results were inaccurate.*

Each Plaintiff alleges that he or she submitted to drug testing, including subsequent hair testing, that "proves" Omega's testing was inaccurate and unreliable. (Complaint, ¶¶ 21, 29–30, 40–43, 60–61, 71–72, 87–90). The alleged testing was not performed on the same hair specimens identified by third-parties as having been submitted by Plaintiffs that were received and tested by Omega. Plaintiffs' allegations of other tests, including both urine and hair specimens, that were negative for cocaine, are therefore no factual support for any claim against Omega.

Courts that have examined claims regarding forensic drug testing have consistently held that other drug tests are no evidence of any alleged negligence or accuracy of a prior test.[8] *See, e.g.*, *Pride v. Lab. Corp. of Am.*, 376 Fed. Appx. 925 (11th Cir. 2010) (affirming summary judgment on negligence claim against drug testing laboratory because evidence of subsequent drug tests did not refute the accuracy of the prior test); *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 787 (N.D. Ill. 2012). In *Phillips v. Quality Terminal Services,* a plaintiff attempted to use a subsequent hair test to disprove the accuracy of a hair test taken a month prior. *Id.* In rejecting the plaintiff's argument, the *Phillips* court observed:

> [I]t is undisputed that the results of a later drug test on a different hair sample do not necessarily indicate that the results of a prior test are incorrect. Variables affecting whether a drug shows up on a subsequent test include time between tests, ingestion history, quantity used, frequency of use, potency of drug, body weight, and metabolism. Thus, a subsequent result cannot determine the validity, accuracy, or truth of a prior test. There simply is no way to know that the drug has not cleared by the time of the second test.

*Id.* Indeed, Plaintiffs actually rely on the accuracy of Omega test results in some instance as putative support for their claims. (Complaint, ¶¶ 25, 39, 46). Thus, Plaintiffs' negligence claims against Omega lack any factual basis and should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs fail to state any claim for which relief may be granted against Omega. Omega respectfully requests that the Court dismiss each of Plaintiffs' claims against it without leave to amend.

---

[8] Expert evidence in such cases has repeatedly confirmed that subsequently obtained testing specimens are not useful for demonstrating negligence. *Meza v. Dep't of Homeland Sec.,* 275 Fed. Appx. 987, 991–92 (Fed. Cir. 2008) (subsequent hair test result not evidence negating accuracy of earlier test result).

DATED this 9th day of February, 2016.

                By:     *s/ D. Faye Caldwell*
                    DAVID M. HOLMES
                    WILSON ELSER MOSKOWITZ
                    EDELMAN & DICKER LLP
                    55 West Monroe Street - Suite 3800
                    Chicago, IL 60603-5001
                    Tel: 312.821.6119
                    Fax: 312.704.1522
                    Email: david.holmes@wilsonelser.com

                    AND

                    D. FAYE CALDWELL, *Pro Hac Vice*
                    CALDWELL EVERSON PLLC
                    2777 Allen Parkway, Suite 950
                    Houston, TX 77019
                    Tel: 713-654-3000
                    Fax: 713-654-3002
                    Email: fcaldwell@caldwelleverson.com
                    Attorneys for Defendant
                    OMEGA LABORATORIES, INC.

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on the 9th day of February, 2016, a true and accurate copy of Defendant Omega Laboratories, Inc.'s Brief in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims was served upon all attorneys of record to the above cause of action via the CM/ECF system.

>Brendan Shiller
>Mary J. Grieb
>The Shiller Preyar Law Offices
>601 S. California Ave.
>Chicago, Illinois  60612
>
>Andrew Kopon, Jr.
>Vincenzo R. Chimera
>Kopon Airdo
>233 South Wacker Drive, Suite 4450
>Chicago, Illinois  60606

>>*s/ D. Faye Caldwell*
>>D. FAYE CALDWELL