**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| L.P., by and through his Next Friend, | ) | |
| TENYIAH PATTERSON, J.H., by and | ) | |
| through his Next Friend, NIKIA CANNON, | ) | |
| I.J., by and through her Next Friend, | ) | |
| JANICE STEVENSON, J.B., by and | ) | |
| through her Next Friend, SHARON FRY, | ) | |
| CC by and through his next friend RHONDA | ) | |
| CAMPBELL, J.R., by and through his Next | ) | |
| Friend, MICHELE ROBINSON and SHANE | ) | |
| RATKOVICH | ) | |
| Plaintiffs, | ) | No:   15-cv-11236 |
| v. | ) | |
| | ) | |
| MARIAN CATHOLIC HIGH SCHOOL, | ) | |
| JOANNA DRACKERT, DOMINICAN | ) | |
| SISTERS OF SPRINGFIELD, and | ) | |
| OMEGA LABORATORIES, | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMANDED** |

### FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, L.P., by and through his Next Friend, TENYIAH PATTERSON,

J.H., by and through his Next Friend, NIKIA CANNON, I.J., by and through her Next Friend,

JANICE STEVENSON, J.B., by and through her Next Friend, SHARON FRY, C.C. by and

through his next friend RHONDA CAMPBELL, SHANE RATKOVICH, and J.R., by and

through his Next Friend and parent Michele Robinson, through their attorney, Mary J. Grieb of

the Shiller Preyar Law Offices, complain as follows against Defendants Joanna Drackert

("Drackert"), MCHS Catholic High School ("MCHS"), Dominican Sisters of Springfield and

Omega Laboratories, and in support thereof state as follows:

### INTRODUCTION

1.  This action is brought for money damages and equitable remedies pursuant to 42 U.S.C. §§

    1981, 1983, and 1985, to address deprivations of Plaintiffs' rights under the Constitution of

the United States and the laws of the State of Illinois, namely the right to be free from racial discrimination and enforce educational contracts on the same terms as enjoyed by white citizens.

2. In addition to money damages, four Plaintiffs seek injunctive relief and ask that this Court order Defendant Marian Catholic High School to stop, or, in the alternative, temporarily enjoin, its drug testing program.

**JURISDICTION**

3. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 28 U.S.C., 1343 (a)(4) et seq., 42 U.S.C. § 1981; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); The Constitution of the United States; and pendent jurisdiction for state claims as provided in 42 U.S.C. §1367(a).

**VENUE**

4. Venue is proper pursuant to 28 U.S. C. § 1391(b). The events alleged within all occurred in the Northern District of Illinois.

**PARTIES**

5. Plaintiff Tenyiah Patterson is the next friend and parent of minor L.P. Plaintiff Janice Stevenson is the next friend and parent of minor, I.J. Plaintiff Nikia Cannon is the parent and next friend of minor J.H. Plaintiff Sharon Fry is the parent and next friend of minor J.B. Rhonda Campbell is the parent and next friend of minor CC. Michele Robinson is the next friend and parent of minor J.R. Shane Ratkovich is 19 years old and suing on his own behalf. L.P., I.J., J.H., J.B., J.R., and C.C. are African-American citizens of the United States, residents of the state of Illinois, and reside with their parents or guardians in Cook County, Illinois. Ratkovich is white, a citizen of the United States and resident of the State of Illinois

and resides in Cook County, Illinois. The plaintiffs, at all relevant times, were or are students at Marian Catholic High School.

6. Defendant Drackert is a white female citizen of the United States and resident of Illinois who at all relevant times was a Guidance Counselor employed at MCHS. She engaged in conduct complained of in the course and scope of her employment acting under her authority as an employee of Marian Catholic High School and under color of state law. Defendant is sued in her individual capacity.

7. Defendant MARIAN CATHOLIC HIGH SCHOOL is a nonpublic nonprofit secondary school registered with and recognized by the Illinois State Board of Education, and at all relevant times operated in Cook County, Illinois. MARIAN CATHOLIC HIGH SCHOOL is a recipient of federal funds as defined by Title VI of the Civil Rights Act of 1964 as amended Title IX of the Education Amendments of 1972 Title 20 U.S.C. Sections 1681-1688).

8. Marian Catholic High School is currently registered and has been registered at all relevant times with the State of Illinois NonPublic Elementary and Secondary School Registration and Recognition program pursuant to 105 ILCS 5/2-3.25(c). By registering with the State of Illinois, Marian Catholic assured compliance with nondiscrimination laws, among other requirements.

9. According to the Illinois State Board of Education, by registering MCHS  receives the following benefits: 1) Assurance that the school's educational program have been approved by ISBE and meets at least minimum state requirements; 2) Certification that the requirements for student entrance in many colleges, universities, and other post-secondary institutions and training programs; 3) Qualification for school membership in the Illinois High School Association and for student participation in Illinois Elementary School Association sanctioned sports, contests, tournaments, etc; 4) Certification to meet the

requirements to qualify students acceptance/assignment to most military training programs;

5) Certification to meet the requirements for school to qualify students taking licensing examinations in fields covered under the Illinois Nursing Act; 6) Certification for school to qualify students for partial cancellation of National Defense Education Act student loans; 7) Certification for requirements to train and employ student teachers; 8) Often required for placement on a salary schedule when nonpublic teachers transfer to other schools; and 9) Certification to expedited the transfer of students and school credits in a manner more-readily accepted by other schools.

10. In 2008, Marian Catholic High School received a federal grant of $84,110 for a school-based student drug-testing program.

11. Marian Catholic High School is owned and operated by Dominican Sisters of Springfield, a non-profit corporation in Springfield, Illinois.

12. In 2009, Dominican Sisters of Springfield received a federal grant in the amount of $149,831 from the United States Department of Education for a Safe and Drug-Free Schools and Communities program.

13. In 2010, Dominican Sisters of Springfield received a federal grant in the amount of $84,878 from the United States Department of Education for a Safe and Drug-Free Schools and Communities program

14. In 2011, Dominican Sisters of Springfield received a federal grant in the amount of $7,233 from the United States Department of Justice.

15. On information and belief, both Dominican Sisters of Springfield and Marian Catholic High School continue to receive federal funding and use federal funding to pay for the drug testing program at Marian Catholic High School.

16. Marian Catholic High School is a member of the Illinois High School Association and participates in the President's Education Awards Program, a federal program.

17. Defendant OMEGA LABORATORIES is a Delaware Corporation whose corporate headquarters is located at 400 N. Cleveland Ave., Mogadore, OH 44260. OMEGA LABORATORIES is a biotechnology company that provides drug testing services for businesses and schools, including MARIAN CATHOLIC HIGH SCHOOL.

18. In 2016, OMEGA LABORATORIES received a federal grant from the United States Department of Veterans Affairs for $36,941.

19. At all relevant times, Omega Laboratories acted as an agent of Marian Catholic High School.

20. Marian Catholic High School advertises to, and enrolls, students from the Chicago, Illinois and northwest Indiana areas.

## BACKGROUND FACTS COMMON TO ALL PLAINTIFFS

21. At all relevant times, six plaintiffs, who are African-American, and one plaintiff, who is not African-American, were students at MCHS.

22. Defendant MCHS has a mandatory drug-screening program for all students. Per the MCHS policy, during the school year, each student is screened for drug use at least one time.

23. Plaintiffs entered into contracts with MCHS agreeing to adhere to the drug-screening program as a precondition to their admission to MCHS.

24. Plaintiffs paid educational expenses to MCHS during their tenure at the high school.

25. Plaintiffs expected to have the opportunity to obtain a better education at MCHS, the opportunity to participate in athletic and extracurricular activities as a part of the Suburban Catholic Conference and Illinois High School Association, and to be treated fairly by all of the educators and employees of MCHS.

26. Plaintiffs were tested pursuant to the mandatory drug-screening program, at the direction of Defendant Drackert.

27. Omega Laboratories, an entity employed by Defendant MCHS, tested the hair of all Plaintiffs.

28. All Plaintiffs had hair samples taken at Marian Catholic High School in Chicago Heights, Illinois.

29. The hair samples were then sent to Omega Laboratories in Ohio, where laboratory tests were run. The results were then returned back to Plaintiffs in Illinois.

30. Plaintiffs all tested positive for cocaine and its main metabolite benzoylecgonin.

31. Plaintiffs did not and do not use cocaine.

32. Plaintiffs were retested at various facilities at the request and cost of their parents. The findings of these subsequent tests, which were not administered by MCHS or Omega Laboratories, are consistent with the truth: the results were negative for cocaine.

33. Marian Catholic High School and Omega Laboratories have a contractual relationship wherein Omega Laboratories performs drug-testing on Marian Catholic High School students, including but not limited to, all plaintiffs herein.

34. Similarly situated non-African-American students, who also testified positive for cocaine were allowed opportunities to re-test immediately, have hair taken from their legs or other parts of their body (as opposed to their heads) and not immediately sent to drug counseling and/or not expelled from Marian Catholic High School.

35. Research and studies indicate that hair testing for drugs is flawed in that the nature of the protocols negatively impacts the accuracy of the results. Namely, hair-testing protocols must account for texture of hair, products used on hair samples, the handling of samples prior to

testing, how hair samples are collected and processed, technologies used to test, and standards of testing.

Plaintiff I.J.

36. Plaintiff IJ is sophomore at MCHS. Plaintiff is also a member of the MCHS band, an athlete with the MCHS lacrosse team, an Honor Roll student and involved in other clubs and extracurricular activities.

37. During the 2014-2015 school year, IJ twice took a random drug test; both times, the test results came back as negative for all drugs.

38. On September 28, 2015, Plaintiff IJ was subjected to a random drug test at the request of Defendant MCHS pursuant to the Defendant's drug screening policy.

39. On October 8, 2015, Omega Laboratories reported that Plaintiff IJ's hair tested positive for cocaine and benzoylecgonine.

40. On October 12, 2015, Defendant Drackert issued a letter to the parent of Plaintiff IJ indicating that Plaintiff IJ tested positive for an illicit substance.

    a. Defendant Drackert stated that pursuant to Defendant MCHS's drug screening policy, the student and/or their family must participate in a substance abuse program that would subject the student to more frequent random drug tests in the future.

    b. Moreover, Defendant Drackert warned that if the student tested positive for illicit substances at any time during the remainder of his/her academic enrollment at the school, he/she would be asked to leave.

41. On October 12, 2015, Plaintiff IJ voluntarily participated in a drug test conducted by Dr. Wilburn of Back to Health Chiropractic that was evaluated by Quest Diagnostics.

42. On October 13, 2015, Quest Diagnostics reported that Plaintiff IJ's urine and hair tested negative for any illegal substances, including cocaine and benzoylecgonine.

43. IJ has suffered emotional distress, embarrassment, humiliation and anxiety about the repercussions of the false positive test on her educational career.

44. Currently, MCHS and Drackert are still demanding that IJ take further drug tests.

Plaintiff JB

45. Plaintiff JB is a junior at MCHS. Plaintiff is also a member of the MCHS Choir, the Social Studies Club and Service Club.

46. On October 26, 2015, Plaintiff JB was subjected to a random drug test at the request of Defendant MCHS pursuant to the Defendant's Drug Screening Policy.

47. On November 5, 2015, Defendant Drackert pulled Plaintiff JB out of class and stated that Omega Laboratories reported that Plaintiff JB's hair tested positive for cocaine and benzoylecgonine

48. Defendant Drackert questioned Plaintiff JB about the alleged drug use, and whether or not her parents used or sold drugs out of their home.

49. Defendant Drackert then called Plaintiff JB's parent, reiterated the drug results over the phone and insisted that there was no way the mistakes were made by Omega Laboratories.

50. On November 5, 2015, Plaintiff Fry demanded MCHS take another test.

51. On November 5, 2015, JB also submitted to a drug test administered by Omega Laboratories.

52. On November 6, 2015, JB voluntarily submitted to a urine drug test evaluated by the Franciscan Physician network.

53. On November 7, 2015, Franciscan Physician network reported that Plaintiff JB's urine tested negative for any illegal substances, including cocaine and benzoylecgonine.

54. On November 10, 2015, Plaintiff JB voluntarily participated in a drug test conducted by Dr. Wilburn of Back to Health Chiropractic that was evaluated by Quest Diagnostics.

55. On November 12, 2015, Quest Diagnostics reported that Plaintiff JB's hair tested negative for any illegal substances, including cocaine and benzoylecgonine.

56. After numerous requests, Fry was given a copy of the false positive test results from Omega Laboratories.

57. On or about November 23, 2015, Plaintiff Fry was given a copy of the second test administered by Omega Laboratories.

58. The second test administered by Omega Laboratories was negative for all illegal substances.

59. On or about November 23, 2015, Defendant Drackert spoke to J.B. in a school hallway, returned both sets of test results to J.B., and told J.B. that "this means it's on its way out of your system." Several of J.B.'s classmates heard this conversation and later asked questions about it.

60. As a result of these actions, J.B. has suffered emotional distress, including shock, anxiety and humiliation.

Plaintiff JH

61. During the 2014-2015 school year, JH was a sophomore at MCHS and an athlete with the MCHS football team.

62. In the fall of 2014, JH was given a random drug test pursuant to MCHS policy. The test came back positive for cocaine.

63. Defendant Drackert called Plaintiff and asked if JH's hair was natural. Plaintiff responded that it was.

64. One day later, JH was given another drug test. That test also came back positive for cocaine.

65. These two test results came from Defendant Omega Laboratories.

66. On or about October 21, 2014, JH was compelled by MCHS to attend drug and substance abuse counseling at a south suburban facility.

67. On January 9, 2015, Plaintiff JH was subjected to a random drug test at the request of Defendant MCHS pursuant to its Drug Screening Policy.

68. On January 15, 2015, Omega Laboratories reported that Plaintiff JH's hair tested positive for cocaine and benzoylecgonine.

69. Defendant Drackert told Plaintiff that the test results had a lower level of cocaine and that "that meant it's working its way out of your system."

70. On March 4, 2015, Plaintiff JH was subjected to another drug test at the request of Defendant MCHS pursuant to the Drug Screening Policy.

71. On March 12, 2015, Omega Laboratories reported that Plaintiff JH's hair tested positive for cocaine and benzoylecgonine.

72. On March 23, 2015, Plaintiff JH voluntarily participated in a drug test conducted by Dr. Wilburn of Back to Health Chiropractic that was evaluated by Quest Diagnostics.

73. On March 26, 2015, Quest Diagnostics reported that Plaintiff JH's hair tested negative for both cocaine and benzoylecgonine.

74. On or about March 9, 2015, Defendant MCHS forced JH to withdraw from Marian Catholic High School pursuant to Defendant MCHS's Substance Abuse Program.

75. As a result of Defendants' actions, Plaintiff suffered emotional distress.

<u>Plaintiff LP</u>

76. Plaintiff LP was a freshman at MCHS, an Honor Roll student and a former captain of the Freshmen Basketball Team.

77. On October 21, 2014, Plaintiff LP was selected to submit to a random drug test at the request of Defendant MCHS pursuant to its Drug Screening Policy.

78. Defendant Drackert issued a letter to Plaintiff LP's parents indicating that Plaintiff's hair style did not comply with the necessary procedure for hair sampling. The letter further stated

that if Plaintiff LP did not comply with the necessary procedures, Plaintiff LP would be subject to next steps in the drug testing process as mandated by Defendant MCHS.

79. These additional drug testing processes, as described by Defendant Drackert, included four additional tests to be given during a six week period of time at Plaintiff LP's expense.

80. On November 20, 2014, Plaintiff LP was subjected to a drug test at the request of Defendant MCHS pursuant to the Defendant's drug screening policy.

81. On December 1, 2014, Omega Laboratories reported that Plaintiff LP's hair tested positive for cocaine and benzoylecgonine.

82. On December 1, 2014, Defendant Drackert issued a letter to the parents of Plaintiff LP indicating that Plaintiff LP tested positive for an illicit substance.

    a. Defendant Drackert indicated that at this time, pursuant to Defendant MCHS protocol, the student and/or their family must participate in a substance abuse program and will be subject to subsequent drug testing in the future.

    b. Defendant Drackert warned that if the student tested positive for illicit substances at any time during the remainder of his/her academic enrollment at the school, he/she would be asked to leave.

    c. Defendant Drackert called Plaintiff Patterson at her place of employment and told individuals employed by Plaintiff that LP was using drugs.

83. On December 6, 2014, Plaintiff LP voluntarily submitted to a drug test that was evaluated by Advocate Healthcare.

84. On December 9, 2014, Advocate Healthcare reported that Plaintiff LP's urine tested negative for any illegal substances, including cocaine and benzoylecgonine.

85. On December 9, 2014, Plaintiff LP was again subjected to a drug test, at the request of Defendant MCHS.

86. On December 15, 2014, Omega Laboratories reported that Plaintiff LP's hair tested positive for cocaine and benzoylecgonine.

87. Subsequently, Plaintiff LP, Plaintiff's parents and Defendant Drackert met to discuss the inconsistent results of Plaintiff LP's drug tests.

88. During this meeting Plaintiff LP denied using any illegal substances however, Defendant Drackert continually demanded that Plaintiff was engaging in illicit drug use.

89. Defendant Drackert warned Plaintiff LP and Plaintiff's parents that Plaintiff would be tested again in 90 days pursuant to Defendant MCHS's substance abuse treatment process. Defendant Drackert adamantly accused Plaintiff LP of using cocaine and that the tests were not mistaken.

90. Plaintiff LP's parents made a formal complaint with Defendant MCHS about Defendant Drackert on December 17, 2014.

91. On December 21, 2014, Sister Judine Hibing, an employee of Defendant MCHS, responded to Plaintiff LP's formal complaint by insisting that the complaint against Mrs. Drackert is an isolated case, and that there has never been a complaint against her in the past.

92. On December 24, 2014, Sister Judine Hibing sent a letter to Plaintiff LP's parents stating that pursuant to Defendant MCHS's Drug Screening Program policy that L.P. was required to submit to a drug test prior to returning to school after the winter break.

   a. Sister Hibing further indicated that L.P.'s continued attendance at MCHS was dependent upon a completely negative test. Sister Hibing contended that leniency would be given to the Plaintiff LP if there is proof that the level of illegal substance in his hair declined.

93. On February 20, 2015, LP was subjected to a drug test at the request of Defendant MCHS.

94. On February 26, 2015, Omega Laboratories reported that Plaintiff LP's hair tested positive for cocaine and benzoylecgonine.

95. On May 13, 2015, Plaintiff LP was subjected to a drug test evaluated by Omega Laboratories at the request of Defendant MCHS.

96. On May 21, 2015, Omega Laboratories reported that Plaintiff LP's hair tested positive for cocaine and benzoylecgonine.

97. On September 1, 2015, Plaintiff LP was subjected to a drug test evaluated by Omega Laboratories at the request of Defendant MCHS.

98. On September 11, 2015, Omega Laboratories reported that Plaintiff LP's hair tested positive for Cocaine and benzoylecgonine..

99. On September 16, 2015, Plaintiff LP voluntarily participated in a hair test conducted by Dr. Wilburn of Back to Health Chiropractic that was evaluated by Quest Diagnostics.

100.    On September 17, 2015, Quest Diagnostics reported that Plaintiff LP's hair tested negative for any illegal substances, including cocaine and benzoylecgonine.

101.    On September 19, 2015, Plaintiff LP voluntarily submitted to a blood test that was evaluated by Advocate Healthcare.

102.    On September 22, 2015, Advocate Healthcare reported that Plaintiff LP's blood tested negative for any illegal substances, including cocaine and benzoylecgonine.

103.    In late September, 2015, Plaintiff LP was forced to withdraw from Marian Catholic High School at the direction of Defendant Drackert, pursuant to Defendant MCHS's Substance Abuse Program after months of inconsistent and indeterminate testing.

104.    As a result of Defendants' conduct, LP suffered emotional distress, including but not limited to anxiety, stress, and embarrassment.

<u>Plaintiff CC</u>

105.    Plaintiff C.C. is a senior at MCHS, where he is First Chair clarinet for the MCHS band as well an elected officer of the over three hundred person band.

106. Although MCHS purports to have a random drug testing policy, Plaintiff C.C. has been tested for drugs on average three times a year. Plaintiff C.C. has taken and passed approximately nine (9) drug test administered by MCHS.

107. All of Plaintiff C.C.'s previous test used hair samples from his leg and were negative, including cocaine and benzoylecgonine.

108. On January 25, 2016 MCHS administered a drug test for C.C. using hair from his head.

109. At the time of the January 25, 2016 drug test Plaintiff C.C. was wearing his hair in an "afro" hair-style, portions of which had been dyed "blonde".

110. MCHS drug testing protocols call for a sample no larger than a pencil to be taken. Plaintiff C.C.'s mother noticed that the sample taken was approximately three times that size.

111. On February 8, 2016, Plaintiff C.C. received a false positive drug test result from Omega Laboratories for the presence of cocaine and benzoylecgonine

112. Plaintiff CC did not and has not used cocaine.

113. On February 8, 2016 Plaintiff C.C.'s mother was informed of positive results and immediately took Plaintiff C.C. to their private physician at the University of Chicago Physicians Group/Ingalls for a urine drug test which was negative for drugs, including cocaine and benzoylecgonine.

114. On February 9, 2016 Plaintiff CC was taken by his mother to MCHS to request a that MCHS administer a second drug test. Also on February 9, 2016 Plaintiff C.C. was taken by his mother to Quest Diagnostics for an independent drug test.

115. Both MCHS and Quest Diagnostics took hair samples from Plaintiff C.C.'s head.

116. Plaintiff C.C. received a false positive drug test result Omega Laboratories for the presence of cocaine and benzoylecgonine from the test conducted February 9, 2016,

117. The results of the February 9, 2016 test administered by Quest Diagnostics were negative for all illegal substances , including cocaine and benzoylecgonine.

118. C.C. is a senior at MCHS on track to graduate Spring 2016.

119. As a result of the false positive, C.C. is being retested on May 9, 2016; a positive result on this test will result in his expulsion weeks before graduation.

120. Plaintiff C.C. and his family have spent approximately $40,000.00 in tuition for his education at MCHS.

121. As a result of these actions, Plaintiff C.C. has suffered emotional distress, including shock, anxiety and humiliation.

<u>Plaintiff Shane Ratkovich</u>

122. In approximately spring 2013, Shane Rathkovich was a junior at Marian Catholic High School and was given a drug test and received a false positive for the presence of cocaine from Omega Laboratories.

123. At the time of testing, Ratkovich was a star football player on the MCHS football team and a prospect for collegiate scholarships.

124. Ratkovich had not used cocaine.

125. On or about June 11, 2013, Ratkovich took a drug test from Quest Diagnostics, which was negative for all drugs.

126. On or about July 2, 2013, Ratkovich again took a test administered by Omega Laboratories, which was positive for cocaine and benzoylecgonine.

127. Ratkovich had not used cocaine or any other illegal substance.

128. Marian Catholic High School expelled Ratkovich at the end of his junior year.

129. Employees of Marian Catholic High School told other students about Ratkovich's positive drug tests, causing embarrassment and humiliation.

130.    Ratkovich was not given an opportunity to contest his false positive drug test results.

131.    As a result of Defendants' misconduct, Ratkovich suffered emotional distress, was expelled from school and paid money out of pocket.

<u>Plaintiff J.R.</u>

132.    In October 2014, J.R. by and through his Next Friend, Michele Robinson, a minor, received a test result from Defendant Omega Laboratories which was positive for cocaine in October of 2014.

133.    J.R. had not used cocaine.

134.    J.R. was compelled to attend drug counseling courses even though he did not use cocaine or any other drug.

135.    On or about January 9, 2015, J.R. received a test result from Redwood Toxicology Laboratory that was negative for cocaine and all other drugs.

136.    J.R. participated in wrestling and football in addition to other extracurricular activities at Defendant Marian Catholic High School. J.R., at the time he was given his drug test in November of 2014, had dreadlocks in his hair.

137.    Defendant Drackert accused J.R. and/or his family of having drugs at home.

138.    J.R. and his family did not have drugs at home or use drugs.

139.    As a result of Defendants' unlawful conduct, J.R. had to attend drug counseling classes and suffered emotional distress.

**COUNT I**

**42 U.S.C § 1981 -- RACE DISCRIMINATION BY ALL DEFENDANTS**

140.    Plaintiffs I.J., L.P., J.H., C.C., J.B., and J.R. re-allege and incorporate all of the allegations in the preceding paragraphs.

141.    The written guidelines, programs and policies of MCHS, constitute a contractual relationship with Plaintiffs in which the above-named Plaintiffs pay or paid tuition to MCHS in return for education, educational enrichment, and character development consistent with values and ethics as espoused by the Dominican Sisters as a Catholic religious order given approval to operate a Catholic School.

142.    Fry, Patterson, Stevenson, Campbell, Robinson and Cannon paid tuition to MCHS.

143.    Defendants Dominican Sisters of Springfield, Marian Catholic High School, and Joanna Drackert intentionally and recklessly discriminated against Plaintiffs based on their race through the administration of their drug testing program, resulting punishments and lack of due process, and as such breached that contractual relationship.

144.    Defendants had knowledge and notice as to the deficiencies of their testing program when Plaintiffs furnished scientifically reliable contradictory test results showing Plaintiffs were negative for the cocaine and related chemical compounds.

145.    Defendants Dominican Sisters of Springfield, and MCHS through defendant Drackert were operating a program of drug screening which resulted in false positives, uneven discipline and expulsions, which subjected Plaintiffs to a hostile environment based on their race, through severe and/or pervasive actions that had Plaintiffs repeatedly engage in drug tests after it was reasonably shown that the positive results of the Omega drug test were likely false. Despite this showing Defendants continued accusing Plaintiffs and their families of drug use, creating an abusive educational environment in breach of the contracts executed with each Plaintiff for educational.

146.    Defendants Dominican Sisters of Springfield and MCHS through defendant Drackert subjected Plaintiffs and their parents to hostile school environment in which Plaintiffs have no reasonable expectation to redress of false accusations through unbiased non-

discriminatory treatment and are fearful to seek assistance from school administrators who, despite a reasonably showing that the resulting positive drug tests were false have subjected them to substance abuse treatment programs, and threatened to dismiss Plaintiffs from school for alleged drug use that has been repeatedly proven to be false.

147.    Defendant MCHS intentionally refused to exert reasonable authority and control over, and in fact, showed tolerance of Defendant Drackert's conduct even after complaints were brought to its attention.

148.    Defendant Omega Laboratories knew or should have known that its drug testing protocols brought forward false positives for cocaine usage in African-American students, including Plaintiffs.

149.    As a direct and proximate result of defendants' conduct, Plaintiffs were deprived of the full and equal enjoyment of the terms and conditions of their contracts with Defendants including services, facilities, privileges, advantages and opportunities available to and enjoyed by white students and their families.

150.    The aforementioned acts and omissions of Defendants constituted intentional discrimination against Plaintiff on the basis of their race, African-American, and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationship in violation of 42 U.S.C. §1981.

151.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered emotional distress, inconvenience, other consequential damages.

WHEREFORE, Plaintiffs I.J., L.P., C.C., J.H., J.B.,and J.R. pray for judgment against Defendants Dominican Sisters of Springfield, Marian Catholic High School, Joanna Drackert, and Omega Laboratories, and respectively requests that this Court:
> A.    Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;
> B.    Order Defendant to make whole Plaintiffs by providing affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

C. Grant Plaintiffs actual, consequential, compensatory, and any other damages that the Court may deem appropriate against Defendant;
D. Order Defendant to pay punitive damages;
E. Grant Plaintiff his attorney's fees, costs, disbursements; and
F. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT II

### TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

152.     Plaintiffs I.J., L.P., J.H., J.B., C.C. and J.R. re-allege and incorporate all of the allegations in the preceding paragraphs.

153.     Title VI of the Civil Rights Act of 1964 makes it an unlawful for persons receiving federal funds to treat persons differently because of their race or because of opposing discrimination.

154.     Funding to Dominican Sisters of Springfield and Marian Catholic High School makes the entire entity subject to the provisions of Title VI of the Civil Rights Act of 1964 .

155.     The Defendants Dominican Sisters of Springfield and MCHS have violated the abovementioned laws by operating a "program" under 42 U.S.C. § 2000d-4a(2) that has had a negative and disparate effect on Plaintiffs and the African American population of the student body in violation of 42 U.S.C. § 2000.  The justifications for permitting this hostile environment and any adverse actions taken against Plaintiffs are pretextual.

156.     Plaintiffs were thus denied their rights under the above Act.

157.     As a result of Defendants' conduct, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs I.J., L.P., J.H., J.B., C.C. and J.R. pray for judgment against Defendants Dominican Sisters of Springfield and Marian Catholic High School and respectively requests that this Court:
A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;
B. Order Defendant to make whole Plaintiffs by providing affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;
C. Grant Plaintiffs actual, consequential, compensatory, and any other damages that the Court may deem appropriate against Defendant;

D.  Order Defendant to pay punitive damages;
E.  Grant Plaintiff his attorney's fees, costs, disbursements; and
F.  Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT III

### 42 U.S.C. §1983 – Equal Protection

158.    All Plaintiffs re-alleges and incorporates all of the allegations in the preceding paragraphs.

159.    Defendant Drackert acted under authority of state law.

160.    Defendant Drackert targeted all Plaintiffs by pursuing false claims against them, discriminating against them in use of the drug screening policy, and failing to abide by the terms of terms and conditions agreed by the Plaintiffs.

161.    Defendant Drackert intentionally treated all Plaintiffs differently than others similarly situated.

162.    There was no rational basis for the difference in treatment.

163.    Defendant Drackert was motivated by illegitimate animus against the Plaintiffs.

WHEREFORE, all Plaintiffs demand judgment against the Defendant Drackert for compensatory damages, punitive damages, attorneys' fees, costs, and such other additional relief that this court deems equitable and just.

## COUNT IV

### 42 U.S.C. 1983 – Procedural Due Process

164.    Plaintiff re-alleges and incorporates all previous paragraphs.

165.    At all relevant times, Defendant MCHS, was recognized by the Illinois State Board of Education pursuant to 105 I.L.C.S. 5/2-3.25, whereby Defendant MCHS assured compliance with federal and state laws regarding, among other things, nondiscrimination and the Defendant MCHS purported to act under the color of the law.

20

166.   All Plaintiffs have a property interest in their education.

167.   Upon Plaintiffs' requests to defend against the alleged accusations made by Defendant

Drackert, and to question Defendant MCHS's drug screening policy, Plaintiffs were placated

or ignored and denied a full and fair opportunity to respond.

168.   Plaintiffs were denied a hearing or other opportunity to respond or be heard and challenge

the false positive test results before adverse actions were taken against them, including, but

not limited to, dismissal.

169.   This intentional denial of Plaintiff's due process rights was in violation of the Fourteenth

amendment.

170.   Defendant Drackert's acts were intentional, willful, and malicious and/or reckless

disregard of Plaintiff's rights as secured by 42 U.S.C.1983 and the U.S. Constitution.

WHEREFORE, Plaintiffs demand judgment against the Defendant Drackert for compensatory

damages, punitive damages, attorneys' fees, costs, and such other additional relief that this court

deems equitable and just.

## Count V

## 42 U.S.C. §1985(3) - Conspiracy to Interfere with Civil Rights

171.   Plaintiffs I.J., L.P., J.H., C.C., J.B., and J.R. re-allege and incorporates all previous

paragraphs.

172.   Beginning in 2014, and continuing to the present day, Defendants Marian Catholic High

School, Joanna Drackert, Dominican Sisters of Springfield, Omega Laboratories, Unknown

employees of MCHS, Omega Laboratories and Dominican Sisters of Springfield conspired to

deprive Plaintiffs of the equal protection of laws and/or the equal privileges and immunities

under the laws of the United States and the State of Illinois.

173. Defendants Marian Catholic High School, Joanna Drackert, Dominican Sisters of Springfield, Omega Laboratories, Unknown employees of MCHS, Omega Laboratories and Dominican Sisters of Springfield agreed and conspired to relentlessly pursue drug use accusations despite inconsistent and even exculpatory testing, subjecting African-American students to more than the required annual drug testing going so far as threatening dismissal from the school for Plaintiff JB, JR, CC and IJ, and enforcing dismissal of Plaintiff JH and Plaintiff LP.

174. The purpose of the conspiracy was to target, falsely accuse and/or remove African-American students from Marian Catholic High School.

175. Said conspiracy was motivated by racial discrimination.

176. Defendants took action in furtherance of said conspiracy proximately causing a deprivation of Plaintiff's federally protected rights, including, those guaranteed by the Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs I.J., C.C., L.P., J.H., J.B., and J.R. demand judgment against the Defendants for compensatory damages, punitive damages, costs, and such other additional relief that this court deems equitable and just.

**Count VI**

**State claim - Negligent Training and Supervision**

177. All Plaintiffs re-allege and incorporate all previous paragraphs.

178. At all relevant times, Defendant MCHS and Dominican Sisters of Springfield owed a duty of reasonable care in regards to the training and supervision of its employees and agents.

179. At all relevant times, Defendant MCHS and Dominican Sisters of Springfield failed to use reasonable care in supervising its employees and agents, including, but not limited to, allowing said employees to make racist and offensive comments about students and their

parents, allowing such conduct to continue after Plaintiffs complained orally and in writing, blatantly overlooking the complained of conduct of its employees, continuing to use and rely upon drug testing which resulted in false positives and failing to adequately train its employees and agents, including but not limited to Drackert and Omega Laboratories, in properly giving and interpreting drug tests.

180.  Defendant MCHS and Dominican Sisters of Springfield's conduct was willful and wanton.

181.  Defendant MCHS and Dominican Sisters of Springfield's breach of their supervisory duty to Plaintiffs was a proximate cause of the injuries and loss suffered by Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendant MCHS and Dominican Sisters of Springfield for compensatory damages, costs, and expenses.

## Count VII

### State Claim - Intentional Infliction of Emotional Distress

182.  All Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs

183.  The acts and conduct of Defendant Drackert set forth above were extreme and outrageous.

184.  Said conduct include falsely accusing Plaintiffs of engaging in substance abuse, subjecting Plaintiffs to multiple drug tests over the span of several months, blatantly disregarding the results of tests when they were returned negative, repeatedly threatening Plaintiffs removal from MCHS based on unfounded conclusions, and continuing to subject students to unwarranted drug tests and pursue their continued involvement in substance abuse treatment programs.

185.  Defendant Drackert intended to cause, or was in reckless disregard of the probability that her conduct would cause, severe emotional distress to Plaintiffs.

186. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiffs and thereby constituted intentional infliction of emotional distress.

187. Defendant Drackert's conduct was undertaken with malice, willfulness and reckless indifference to the rights of Plaintiffs.

188. As a proximate result of Defendant's wrongful acts, Plaintiffs suffered emotional and psychological distress and anxiety.

189. The aforementioned acts & omissions of Defendant Drackert constitute intentional infliction of emotional distress, in violation of the laws of the State of Illinois.

190. At all relevant times, Defendant Drackert was an employee of MCHS and Dominican Sisters of Springfield.

WHEREFORE, Plaintiffs demand judgment against Defendant MCHSMCHS and Dominican Sisters of Springfield  for compensatory damages, costs, and expenses.

## COUNT VIII

### DEFAMATION

191. All Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

192. All Plaintiffs maintained good reputations as highly involved students and student-athletes at Marian Catholic High School, and, in the case of J.H., Ratkovich and L.P., at their current schools.

193. Plaintiffs' reputations are, in large part, contingent upon their success in academics, athletics and extracurricular activities.

194. The results of the various drug tests administered to Plaintiffs were false. The disciplinary actions taken against all Plaintiffs were arbitrary, discriminatory and without due process.

195.   Omega Laboratories and/or one its employees or agents communicated the false information regarding the drug test results to Marian Catholic High School.

196.   One or more employees of Marian Catholic High School and/or Dominican Sisters of Springfield publicly declared the results of the drug test results and non-Plaintiff students heard the results.

197.   The transfer of a false positive drug test has impugned Plaintiffs' character, integrity and reputation.

198.   The false statements directly harmed the Plaintiffs by questioning their character and integrity and by accusing them of illegal conduct.

WHEREFORE, Plaintiff demands judgment against Marian Catholic High School, Joanna Drackert, Dominican Sisters of Springfield, Omega Laboratories, Unknown employees of MCHS, Omega Laboratories and Dominican Sisters of Springfield for compensatory damages, punitive damages, costs, and such other legal and additional relief that this Court deems equitable and just.

### Count IX

#### State claim – Negligence (as against Omega Laboratories)

199.   Plaintiffs re-allege and incorporate all previous paragraphs.

200.   Defendant Omega Laboratories holds itself out as an expert in the field of hair testing for drugs of abuse and controlled substances, and advertises and solicits business from other businesses to provide said services.

201.   Omega Laboratories knows that a positive test result for a controlled substance will negatively reflect on an individuals' reputation, will negatively impact an individual's educational, athletic and career pursuits, and, in the instant case, could cause expulsion from an educational institution.

202.   Omega had a duty to properly and accurately perform and report results of its drug tests.

203.   Given that Plaintiffs had not used cocaine at any time prior to being given the various

drug tests by Omega Laboratories, but Omega Laboratories reported "positive" findings for

cocaine, Omega Laboratories failed to properly and accurately perform and/or report the

results of the drug tests given to Plaintiffs.

204.   Omega's failure to properly and accurately perform and/or report the results of the drug

tests given to Plaintiffs is a breach of its duty. It breached its duty in one or more of the

following ways:

   a.   Failing to properly perform each drug test;
   b.   Failing to properly de-contaminate each drug test;
   c.   failing to properly train its employees to perform each drug test;
   d.   failure to correct for biases against African-American and dark-haired people in drug
        testing;
   e.   failing to account for false positive test results due to environmental racial factors;
   f.   Incorrectly reporting the results of each drug test; and
   g.   Failing to properly maintain and preserve a chain of custody.

205.   As a direct and proximate result of Omega Laboratories' breach of duty, Plaintiffs

suffered damages, including but not limited to emotional distress, humiliation,

embarrassment and/or suspension and expulsion from school.

WHEREFORE, Plaintiffs demand judgment against Defendant Omega Laboratories for

compensatory damages, punitive damages, costs, and expenses.

## COUNT X
### *Respondeat Superior* Liability Against Marian Catholic High School and the Dominican Sisters of Springfield for State Law Claims Against Defendant Drackert

206.   Plaintiffs re-allege and incorporate all previous paragraphs.

207.   Defendants Marian Catholic High School and the Dominican Sisters of Springfield are

the employers of Defendant Drackert.

208.    Defendants Marian Catholic High School and the Dominican Sisters of Springfield are

liable for its employees' actions committed while in the scope of their employment under the

doctrine of *respondeat superior*.

209.    The acts of Defendant Drackert described in the state-law claims specified above were

willful and wanton and committed in the scope of her employment as employee of Marian

Catholic High School and the Dominican Sisters of Springfield.

210.    As a proximate cause of the Defendant Drackert's unlawful acts, which occurred within

the scope of her employment activities, Plaintiffs were injured.

WHEREFORE, Plaintiffs demand judgment against Defendants Marian Catholic High School

and the Dominican Sisters of Springfield for compensatory damages, costs, and such other and

additional relief that this Court deems equitable and just.

## Count XI

### Title II of Civil Rights Act of 1964

211.    Plaintiffs IJ, CC, JB, LP, JH, and JR were denied the full and enjoyment of the

facilities, services, privileges and accommodations of Marian Catholic High School due

to discrimination based on their race.

212.    As a result, Plaintiffs suffered damages.

**WHEREFORE** Plaintiffs pray for judgment against Defendant Marian Catholic High School
and respectively requests that this Court:
   A.  Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff
       under appropriate Federal Law;
   B.  Order Defendant to make whole Plaintiffs by providing affirmative relief
       necessary to eradicate the effects of Defendant's unlawful practices;
   C.  Grant Plaintiffs actual, consequential, compensatory, and any other damages that
       the Court may deem appropriate against Defendant;
   D.  Order Defendant to pay punitive damages;
   E.  Grant Plaintiff his attorney's fees, costs, disbursements; and
   F.  Grant Plaintiff such further relief as the Court deems necessary and proper in the
       public interest.

WHEREFORE, Plaintiffs pray for judgment against all Defendants and request that this Court:

a. Declare the conduct of the Defendants in violation of the rights guaranteed to Plaintiffs under appropriate law;

b. Order Defendant to make whole Plaintiffs by providing affirmative relief necessary to eradicate the effects of Defendant's conduct,

c. Grant Plaintiff actual, consequential, and compensatory and any other damages that the Court may deem appropriate against Defendants.

d. Order Defendants to stop performing drug testing on any students at Marian Catholic High School; or, in the alternative, order Defendants to stop performing drug testing on C.C., I.J., J.R. and J.B.

e. Grant Plaintiffs such further relief as the Court deems necessary and proper in the public interest.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

By: One of Their Attorneys:
/s/Mary J. Grieb ____
Mary J. Grieb
The Shiller Preyar Law Offices
601 S. California Ave.
Chicago, Illinois 60612
312-226-4590