1          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3   L.P., by and through his      )
    Next Friend, Tenyiah Patterson, )
4   et al.,                       )
                                  )
5              Plaintiffs,        )
                                  )
6        vs.                      )   No. 15 C 11236
                                  )
7   MARIAN CATHOLIC HIGH SCHOOL,  )
    et al.,                       )   Chicago, Illinois
8                                 )   May 13, 2016
               Defendants.        )   9:56 o'clock a.m.
9

10            TRANSCRIPT OF PROCEEDINGS -
             Ruling on Motions to Dismiss
11        BEFORE THE HONORABLE MANISH S. SHAH

12
    APPEARANCES:
13
    For the Plaintiffs:      SHILLER PREYAR LAW OFFICES
14                           BY:  MS. MARY J. GRIEB
                             601 South California Avenue
15                           Chicago, Illinois  60612
                             (312) 226-4590
16
    For Defendants Marian    KOPON AIRDO, L.L.C.
17  Catholic H.S., Drackert, BY:  MR. ANDREW KOPON, JR.
    and Dominican Sisters:   233 South Wacker Drive
18                           Suite 4450
                             Chicago, Illinois  60606
19                           (312) 506-4450

20  For Defendant Omega      WILSON, ELSER, MOSKOWITZ, EDELMAN
    Laboratories:            & DICKER
21                           BY:  MR. DAVID M. HOLMES
                             55 West Monroe Street
22                           Suite 3800
                             Chicago, Illinois  60603
23                           (312) 704-0550

24

25

          Colleen M. Conway, Official Court Reporter

APPEARANCES (Continued):


For Defendant Omega        CALDWELL EVERSON, P.L.L.C.
Laboratories:              BY:  MS. D. FAYE CALDWELL
                           2777 Allen Parkway
                           Suite 950
                           Houston, Texas   77019
                           (713) 654-3000

COLLEEN M. CONWAY, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1714
Chicago, Illinois  60604
(312) 435-5594
colleen_conway@ilnd.uscourts.gov

1       (Proceedings heard in open court:)

2           THE CLERK:  15 C 11236, L.P. versus Marian Catholic

3   High School.

4           MS. GRIEB:  Mary Grieb, G-r-i-e-b, on behalf of

5   plaintiffs.

6           MR. KOPON:  Good morning, Your Honor.  Andy Kopon on

7   behalf of Marian Catholic, the Dominican Sisters of

8   Springfield, and Joanna Drackert.

9           MR. HOLMES:  David Holmes for Omega Laboratories.

10          MS. CALDWELL:  Faye Caldwell for Omega Laboratories.

11          THE COURT:  Good morning.  I can give you a ruling on

12  the motions to dismiss now.  It will take me several minutes to

13  announce my ruling and explain it.  Why don't you have a seat.

14          MS. GRIEB:  Okay.

15          THE COURT:  Marian Catholic High School, owned and

16  operated by the Dominican Sisters of Springfield, tests its

17  students for drug use by taking hair samples from the students

18  and sending the samples to Omega Laboratories for analysis.

19          The seven plaintiffs challenged the drug-testing

20  regime administered by the school, the lab, and Guidance

21  Counselor Joanna Drackert.  Six plaintiffs allege racial

22  discrimination under 42 U.S.C. §§ 1981, 1985(3), 2000d, also

23  known as Title VI, and 2000a, also known as Title II of the

24  Civil Rights Act of 1964, and all seven plaintiffs allege

25  violations of equal protection and due process rights under 42

1  U.S.C. § 1983 along with state law claims.  Defendants move to
2  dismiss the complaint.

3       The complaint may be dismissed if it fails to state a
4  claim upon which relief may be granted, Federal Rule of Civil
5  Procedure 12(b)(6).  At this stage, the facts alleged in the
6  complaint are assumed to be true, and inferences from those
7  facts are drawn in plaintiffs' favor.

8       To survive a motion to dismiss, the complaint must
9  state a claim to relief that is plausible on its face and must
10  do more than recite the elements of a cause of action in a
11  conclusory fashion.  *Roberts v. City of Chicago*, 2016 Westlaw
12  1257821 at *2, a Seventh Circuit decision of 2016.

13       The plaintiffs are six African-American and one white
14  current or former Marian Catholic High School students.  The
15  school, through a mandatory drug-screening program and at the
16  direction of Guidance Counselor Drackert, tested each student
17  by sending samples of the students' hair to Omega Laboratories.
18  Omega's tests came back positive for cocaine, but the
19  plaintiffs did not use cocaine.

20       At their parents' expense, each plaintiff took new
21  tests not from Omega, and those tests came back negative.  Each
22  plaintiff had varying experiences with the school's response to
23  the positive drug tests, but in general, the school, through
24  Drackert and other employees, did the following.  They, 1,
25  defended the Omega results; 2, warned students that expulsion

1  would follow from future positive tests; 3, said that negative

2  results or lower levels in subsequent tests meant that the drug

3  was working its way out of the student's system; 4, required

4  additional testing; 5, accused students and their families of

5  possessing drugs at home; 6, mentioned the positive tests

6  within earshot of others; and 7, expelled or forced some

7  plaintiffs to withdraw from the school.

8         To be reliable, a drug test from a hair sample must

9  account for hair texture, products in the hair, how the samples

10  were handled, collected, and processed, and the technologies

11  and standards used in testing.

12         I note that this allegation, which is paragraph 35

13  from the first-amended complaint, is a fairly obvious and

14  conclusory allegation that's applicable to any scientific test,

15  and the complaint does not allege any actual failings in

16  Omega's testing methods other than the allegation that Omega's

17  positive results were necessarily wrong because each plaintiff

18  did not use cocaine.

19         The current complaint, the first-amended complaint,

20  does not allege that hair testing has a racially disparate

21  impact or that the initial tests were ordered in a

22  discriminatory manner.  Indeed, it alleges that Plaintiff

23  Ratkovich is white and tested positive, and some students'

24  non-Omega retests were hair-based.  The complaint does not

25  allege that Omega knew the race of the students.  Putting

1    Ratkovich to one side, the complaint does state that similarly

2    situated non-African-American students who tested positive for

3    cocaine were given more favorable treatment in the form of

4    opportunities for immediate retesting, hair samples taken from

5    other body parts, no immediate drug counseling, and no

6    expulsion.

7           Defendant Drackert, the guidance counselor who ran

8    the school's drug-testing program, is the sole defendant in

9    plaintiffs' Section 1983 claims.  That statute creates a

10   federal remedy for violations of constitutional rights by what

11   are called state actors.  *Babchuk versus Indiana University*

12   *Health, Inc.*, 809 F.3d 966, 968 (Seventh Circuit, 2016).

13   Private entities and their employees are generally not

14   considered state actors even when the government influences or

15   pressures their activities.  See *Babchuk* at 971.

16          A claim under Section 1983 requires the state to be

17   "responsible for the specific conduct of which the plaintiff

18   complains."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

19          A private defendant is a state actor if she is a

20   willful participant in joint action with the state or its

21   agents.  *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (Seventh

22   Circuit, 2015).  See also *Mackall v. Cathedral Trustees, Inc.*,

23   465 Fed. Appendix 549, 551 (Seventh Circuit, 2012), which says,

24   "State action requires willful collusion with the state to

25   violate constitutional rights."

1        Government funding, extensive state regulation, the
2    public function provided by education, and the symbiotic
3    relationship between a private school and the state are not
4    sufficient to label a private school and its employees state
5    actors.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 to 842
6    (1982).
7        And I note that Section 1983 does not apply to
8    federal government agents, so receipt of federal funds cannot
9    make someone a state actor under Section 1983.  See *Musso v.*
10   *Suriano*, 586 F.2d 59, 61, Footnote 4 (Seventh Circuit, 1978).
11       The state action inquiry is necessarily fact-bound,
12   *Brentwood Academy versus Tennessee Secondary School Athletic*
13   *Association*, 531 U.S. 288, 298 (2001), and a complaint need
14   only allege a plausible theory of recovery.  But here,
15   plaintiffs' allegations do not plausibly suggest that Drackert
16   is a state actor.  The State of Illinois is not alleged to be
17   pervasively intwined in Drackert's drug-testing administration.
18   At most, the complaint alleges that Drackert works for a school
19   that is registered with the state and receives federal money
20   for drug testing.  One cannot infer from those allegations that
21   Drackert colludes with the state to violate the constitutional
22   rights of her students.  The Section 1983 claims are dismissed.
23       Section 1981 makes it unlawful to discriminate on the
24   basis of race when making and enforcing contracts, and Title VI
25   of the Civil Rights Act of 1964 prohibits racial discrimination

1    under any program or activity receiving federal financial

2    assistance.  These statutes require allegations sufficient to

3    infer intentional discrimination, that the plaintiffs were

4    treated differently because of race.  See *Dunnet Bay*

5    *Construction Company versus Borggren*, 799 F.3d 676, 697

6    (Seventh Circuit, 2015).

7         It initially appeared as though plaintiffs were

8    alleging that the hair tests conducted by Omega were

9    intentionally discriminatory, as suggested in the original

10   complaint at paragraph 23, but the first-amended complaint

11   contains no such allegations.  It's now clear that plaintiffs'

12   discrimination claims arise from how Drackert and the school

13   treated them after the false-positive tests were revealed.

14   That's from page 13 of plaintiffs' response to the motions to

15   dismiss.

16        It's not alleged that the tests were conducted in a

17   discriminatory manner, and Omega is not alleged to have even

18   known the race of the testing subjects, and it would not be

19   reasonable to infer knowledge of race on the part of the

20   drug-testing company.  So even assuming the hair tests as

21   conducted by Omega had a racially disparate impact, there are

22   no facts alleged to suggest that Omega engaged in intentional

23   racial discrimination.  Omega, therefore, is dismissed from the

24   Section 1981 claim.

25        The complaint alleges that, "Similarly situated

1    non-African-American students who also tested positive for

2    cocaine were allowed opportunities to retest immediately, have

3    hair taken from their legs or other parts of their body as

4    opposed to their heads, and not immediately sent to drug

5    counseling and/or not expelled from Marian Catholic High

6    School."  That's paragraph 34 from the first-amended complaint.

7            Plaintiffs do not attribute this conduct to any

8    defendant in particular -- it's written in the passive voice --

9    but it is reasonable to infer that Drackert and, through

10   Drackert, the school are the responsible parties.  This

11   allegation, however, sits in tension with other more specific

12   allegations that describe, 1, immediate retesting given to

13   African-American plaintiffs (paragraphs 50 to 51, 64, 85, and

14   114 from the first-amended complaint); 2, discipline falling

15   short of expulsion for African-American plaintiffs (paragraphs

16   36 to 44, 45 to 60, 105 to 121, and 132 to 139); and 3, the

17   expulsion of Ratkovich, a white student (paragraph 131).

18           Ordinarily, treating similarly situated individuals

19   outside of a protected class differently than those within the

20   protected class would be a basis to infer intentional

21   discrimination by a defendant.  But here, the varied ways in

22   which Drackert treated positive-testing students suggests that

23   the favorable treatment referenced in paragraph 34 was not

24   favorable in any material way and was, in fact, consistent with

25   how African-American students were treated.  Read as a whole,

1  the amended complaint lacks a basis from which to infer that

2  Drackert's administration of the drug-testing program as to

3  these specific plaintiffs was racially motivated.  The Section

4  1981 and Title VI claims are, therefore, dismissed.

5  The parties briefed whether there was sufficient

6  impairment in contract stated in a Section 1981 claim, but I

7  have not reached that question.

8  Section 1985 prohibits conspiracies to deprive people

9  of their legal rights but only when the conspirators have a

10  racial or otherwise class-based invidious discriminatory

11  animus.  The complaint contains an allegation that the

12  conspiracy was motivated by racial discrimination (paragraph

13  175), but, as I've already discussed, I see no sufficient

14  allegation of intentional racial discrimination beyond

15  conclusory statements.

16  A conclusory fact can be perfectly acceptable at the

17  pleadings stage, but the detail in the first-amended complaint

18  makes drawing the necessary plausibility inference

19  inappropriate when the key fact of discriminatory treatment is

20  not consistent with the complaint as a whole.

21  In addition, other than the conclusory statement that

22  there was an agreement, there are no facts from which to infer

23  agreement amongst Drackert, the school, Dominican Sisters, and

24  Omega.  There is no basis to infer that Omega knew the race of

25  its testing subjects, so an agreement to conduct the tests does

1    not support an inference of an agreement to engage in racial
2    discrimination.

3          By alleging that Omega is part of the conspiracy,
4    plaintiffs must allege something that allows an inference that
5    Omega had a meeting of the minds with the school officials to
6    discriminate on the basis of race, and that link is not alleged
7    in the complaint.

8          The intracorporate conspiracy doctrine doesn't apply,
9    in my view, to this complaint.  Because reading the complaint
10   in plaintiffs' favor, Omega is an outside agent for
11   intracorporate conspiracy purposes.  Nevertheless, the alleged
12   conspirators are not alleged to have reached a meeting of the
13   minds to violate equal protection.  The Section 1985 claim is,
14   therefore, dismissed.

15         With respect to Title II of the Civil Rights Act, I
16   read the statutory list of public accommodations to be
17   exclusive, and there is no ambiguity in the statutory text,
18   that it's not necessary to look to another statute like the ADA
19   to understand what 42 U.S.C. § 2000a covers.  That statute
20   references public accommodation "as defined in this section."
21   The section lists specific establishments targeting lodging,
22   food service, entertainment, or establishments located within
23   covered establishments or that have covered establishments
24   within them.  Nothing in the complaint allows me to infer that
25   Marian Catholic High School is one of these covered

1    establishments.

2    The statutory text is clear, but beyond that, I note

3    that there is no need to stretch Title II to reach private

4    schools because both Section 1981 and Title VI exist, and the

5    Supreme Court has noted that there appears to be no

6    "overlapping application of Section 1981 and Title II of the

7    1964 Act with respect to racial discrimination practiced by

8    private schools." *Runyon v. McCrary*, 427 U.S. 160, 172,

9    Footnote 10 (1976).  Placing private schools outside the reach

10   of Title II would not leave a gap in the remedial system set up

11   by the anti-discrimination statutes.

12   In addition, while it is an open question in this and

13   I think most circuits, if I were called upon to decide it, I

14   would conclude that a Title II claim requires intentional

15   discrimination.  Title II is like Title VI in its language and

16   purpose, and Title VI reaches only intentional discrimination.

17   Since the first-amended complaint, as I've already described,

18   does not adequately allege intentional discrimination, it does

19   not state a Title II claim.  So for those two different

20   reasons, the Title II claim is dismissed.

21   Because the federal claims are dismissed and

22   jurisdiction over the state law claims is based on supplemental

23   jurisdiction, I decline jurisdiction over the state law claims

24   and they are dismissed without prejudice.  I have not reached

25   the merits of the various arguments raised by defendants in

1  moving to dismiss the state law claims.

2        So in conclusion, defendants' motions to dismiss are

3  granted. Plaintiffs have amended the complaint once in

4  response to the motions to dismiss, but this is the first

5  ruling on a motion to dismiss. And given the complexity of the

6  issues and the possibility that some or all of the plaintiffs

7  may be able to revise their theories and their allegations, the

8  dismissal is without prejudice and I will give the plaintiffs

9  leave to replead.

10        My thought was to give the plaintiffs three weeks to

11  submit a second-amended complaint or say whether they intend to

12  replead or not, and to have a status around then to talk about

13  what we would do next. Does that work for the plaintiffs?

14        MS. GRIEB: That is fine, Your Honor.

15        THE COURT: Okay. So plaintiffs have three weeks

16  from today to replead and let's have a status around that time.

17        THE CLERK: Let's see. Everyone, that would be June

18  3rd. And how about a status on -- let's see -- June 8th at

19  9:30.

20        THE COURT: Does that work for defense counsel?

21        MR. KOPON: Yes, Your Honor.

22        MS. CALDWELL: Yes, sir.

23        THE COURT: Okay. And then let me just offer one

24  observation. There may very well be a management problem at

25  the school, and there may be issues with how the school is

1  handling its drug-testing policy.  The flexibility that comes

2  with how the school disciplinary process is handled can be a

3  minefield and a source of conflict.  While I have concluded

4  that this particular complaint did not adequately allege

5  intentional racial discrimination, I hope the school is taking

6  a hard look at what's been happening there.  But that's just an

7  observation on my part.

8              Is there anything else we ought to talk about this

9  morning?  From the plaintiffs?

10             MS. GRIEB:  No.

11             THE COURT:  From the defense?

12             MR. KOPON:  No, Your Honor.

13             MS. CALDWELL:  No, Your Honor.

14             THE COURT:  Okay.  Thank you.

15             MR. HOLMES:  Thank you.

16             THE COURT:  And I appreciate your patience while the

17  motions were under advisement.

18             MS. GRIEB:  Thank you.

19       (Proceedings concluded.)

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3

 4

 5              I, Colleen M. Conway, do hereby certify that the

 6   foregoing is a complete, true, and accurate transcript of the

 7   proceedings had in the above-entitled case before the

 8   HONORABLE MANISH S. SHAH, one of the Judges of said Court, at

 9   Chicago, Illinois, on May 13, 2016.

10

11

12         /s/ Colleen M. Conway, CSR,RMR,CRR        05/16/16

13              Official Court Reporter               Date
                United States District Court
14              Northern District of Illinois
                     Eastern Division
15

16

17

18

19

20

21

22

23

24

25
```